IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Louis English Fuller,<br><br>                     Petitioner,<br><br>vs.<br><br>Leroy Cartlidge, Warden MCCI,<br><br>                     Respondent. | C/A No. 0:09-1352-RBH-PJG<br><br>**REPORT AND RECOMMENDATION** |

The petitioner, Louis English Fuller ("Fuller"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (Docket Entry 18.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 20.) Fuller filed a response. (Docket Entry 22.) Having carefully considered the parties' submissions and the record in this case, the court finds that the respondent's motion should be granted.

**BACKGROUND**

Fuller was indicted in January 1998 in Fairfield County for murder (98-GS-20-0058). (App. at 435-38, Docket Entry 19-1 at 437-40.) Fuller was represented by Creighton Coleman, Esquire, and on October 19-20, 1998 was tried before a jury and found guilty as charged. (App. at 328-29, Docket Entry 19-1 at 330-31.) The circuit court sentenced Fuller to life imprisonment. (App. at 331, Docket Entry 19-1 at 333.)

Fuller appealed and was represented by Robert Pachak, Esquire, Assistant Appellate Defender of the South Carolina Office of Appellate Defense. On November 21, 2000, Pachak filed a final brief in which he raised the following issues:

> I. Whether the trial judge erred in refusing to give a jury charge on accessory after the fact to murder?
>
> II. Whether the trial court erred in refusing to give a complete and clear instruction on accomplice liability when the one given was confusing in relation to the facts of this case?

(App. at 338, Docket Entry 19-1 at 340.) The State filed a brief in response. (App. at 349-67, Docket Entry 19-1 at 351-69.) The South Carolina Supreme Court affirmed the decision of the lower court and dismissed Fuller's appeal by written order filed July 23, 2001. (State v. Fuller, Op. No. 25334 (S.C. July 21, 2001), App. at 368-73, Docket Entry 19-1 at 370-75.) It appears that Fuller attempted to file a motion for rehearing, which was received after the issuance of the remittitur, as referenced in the letter of the Clerk of the South Carolina Supreme Court. (See id.) As stated by the clerk, no action was taken on Fuller's motion because the South Carolina Supreme Court no longer had jurisdiction over his case.

Fuller filed a *pro se* application for post-conviction relief ("PCR") on June 27, 2002. (Fuller v. State of South Carolina, 02-CP-20-222, App. at 374-80, Docket Entry 19-1 at 376-82.) In his application, Fuller raised the following issues:

> (a) Ineffective Assistance of Counsel
>
> (b) Lack of Subject Matter Jurisdiction
>
> (c) Insufficiency of evidence presented at trial
>
> (d) The State did not meet it's [sic] burden of proof
>
> (d) Motion for directed verdict should have been granted
>
> (f) Abuse of discretion.

*PJG*

(App. at 375-76, Docket Entry 19-1 at 377–78.) The State filed a return on February 14, 2006. (App. at 381-85, Docket Entry 19-1 at 383-87.) On February 27, 2006, the PCR court held an evidentiary hearing at which Fuller was present and testified and was represented by Charles J. Johnson, Jr., Esquire. (App. at 386-421, Docket Entry 19-1 at 388-423.) The PCR court dismissed Fuller's PCR application with prejudice by order filed February 28, 2006. (App. at 423-30, Docket Entry 19-1 at 425-32.) Specifically, the PCR court rejected Fuller's allegation of lack of subject matter jurisdiction and ruled that Fuller had failed to establish that trial counsel was ineffective (1) in failing to object to the trial court's exclusion of a proffered in-court demonstration, (2) in failing to move to suppress the introduction of certain boots into evidence in the absence of a search warrant, (3) in failing to suppress Fuller's statement to law enforcement, (4) in failing to ask for a cautionary jury instruction as to co-defendants' statements, and (5) in failing to ask for a mere presence jury instruction. (Id.) Additionally, the PCR court ruled that while Fuller had presented argument at the PCR hearing that his appellate counsel was ineffective for not appealing the trial court's decision regarding the in-court demonstration, Fuller had not raised this issue in his PCR application and it therefore was not before the court. (App. at 426, Docket Entry 19-1 at 428.)

Fuller filed a *pro se* Motion to Alter or Amend (App. at 431-32, Docket Entry 19-1 at 433-34), which was denied by the court in an order filed April 10, 2006 (App. at 433, Docket Entry 19-1 at 435).

Fuller, initially represented by Robert Pachak, Esquire, filed a petition for a writ of certiorari from the denial of his PCR application. Fuller subsequently moved to relieve Pachak as counsel, to withdraw his petition, and to submit a *pro se* petition for a writ of certiorari. The South Carolina Supreme Court granted Fuller's request to relieve Pachak as counsel and to withdraw his petition, but denied Fuller's request to proceed *pro se*. (Docket Entry 19-3.) Instead, the court appointed

Reynolds H. Blankenship, Esquire to represent Fuller. Fuller, through counsel, filed his petition for a writ of certiorari on September 21, 2007 in which he presented the following question:

> Whether trial counsel was ineffective in Petitioner's murder trial in failing to request a jury charge on mere presence?

(Docket Entry 19-4 at 2.) The State filed a return (Docket Entry 19-5) and Fuller replied (Docket Entry 19-6). By order dated January 30, 2009, the South Carolina Court of Appeals denied Fuller's petition for a writ of certiorari. (Docket Entry 19-7.) Fuller filed a petition for rehearing (Docket Entry 19-9) which was denied by order dated February 23, 2009 (Docket Entry 19-10). The remittitur was issued on April 29, 2009. (Docket Entry 19-12.) Additionally, Fuller submitted a *pro se* undated document with the South Carolina Supreme Court entitled "Petition for Issuance of an Extraordinary Writ." (Docket Entry 1-1 at 19-33 & Docket Entry 19-8.) On April 8, 2009, the Supreme Court dismissed this request pursuant to Key v. Currie, 406 S.E.2d 356 (S.C. 1991), based on its finding that "no extraordinary reason exists to entertain [the Petition] in this Court's original jurisdiction." (Docket Entry 1-1 at 34; see also Docket Entry 19-11.)

## FEDERAL HABEAS ISSUES

In Fuller's federal petition for a writ of habeas corpus, he raises the following issues:

**Ground One:** Petitioner received ineffective assistance of counsel when Petitioner was denied his right to confront witnesses against him where the trial court erroneously ruled [that a] demonstration [was] inadmissible.

**Ground Two:** Petitioner was entitled to a mere presence charge. His trial counsel was ineffective for not requesting one.

(See Pet., Docket Entry 1 at 6-8.)

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

**1.     Generally**

In accordance with § 2254, claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**2.     Exhaustion Requirement**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or

barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth v. Ozmint, 377 F.3d 437 (4th Cir. 2004); see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**C.     Respondent's Motion for Summary Judgment**

    **1.     Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of trial and appellate counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In claims involving allegations that trial counsel was ineffective, prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent

one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

**2.      Ground One**

**i.      Generally**

In Ground One, Fuller appears to argue that his trial counsel was ineffective for failing to object to the judge's decision precluding him from conducting an in-court demonstration. Fuller also contends that his appellate counsel was ineffective for failing to raise the issue on direct appeal.

During Fuller's trial, Adrian Peay, Fuller's roommate, testified that Fuller entered Peay's room around two in the morning holding his hands up and stating, "We did it." (App. at 81, Docket Entry 19-1 at 83.) Peay further testified that he did not have his glasses on but "[w]hen [Fuller] held his hands up it appeared there was some blood on his hands." (Id.) Peay stated that there was a small reading lamp in his room that was on when Fuller arrived. (App. at 87-88, Docket Entry 19-1 at 89-90.)

Fuller in turn testified that Peay kept a red light bulb in the lamp. (App. at 248, Docket Entry 19-1 at 250.) At that point, trial counsel then requested for the lights to be turned off and the shades to be closed in the courtroom and that he be permitted to turn on a lamp with a similar red light bulb. (Id.) The solicitor objected and in the presence of the jury, trial counsel argued that he wanted "to show the jury that blood could not have been seen because [if] you cut the lights out just like it was in that room that night [and] put red ink on your hand [then] you can't see it next to the light from . . . ." (App. at 249, Docket Entry 19-1 at 251.) The court sustained the objection, stating that in-court demonstrations are not permissible. (Id.)

Trial counsel proceeded to question Fuller about the effect of the lamp's light on the room, and Fuller stated that "[t]he entire room is red, has a red tint." (App. at 250, Docket Entry 19-1 at 252.) Further, during closing arguments, trial counsel reminded the jury that Peay testified that he saw Fuller with blood on his hands after having just awoken, without wearing his glasses, and with the red lamp on, which would make everything in the room look red. (App. at 278, Docket Entry 19-1 at 280.) Trial counsel used this example one of a few reasons as to why Peay was not credible. (Id.)

At the PCR hearing, Fuller argued for the first time that trial counsel was ineffective in failing to object to the trial court's ruling sustaining the State's objection to the in-court demonstration. Alternatively, Fuller argued that appellate counsel was ineffective for failing to appeal the trial court's ruling. (See App. at 388-90 & 426, Docket Entry 19-1 at 390-92, 428.) The State objected to the inclusion of these grounds in Fuller's PCR proceedings because they were not pled in his application. Further, with regard to the allegations of ineffective appellate counsel, the State argued that appellate counsel was not at the hearing, as they received no notice that claims were being raised pertaining to him. (App. at 391-92, Docket Entry 19-1 at 393-94.)

In support of these claims, Fuller testified during the PCR hearing that he believed the judge had erred in refusing to permit the in-court demonstration. (App. at 396, Docket Entry 19-1 at 398.) Fuller also stated that appellate counsel did not respond to Fuller's letters or speak with him about his appeal, and that had appellate counsel contacted him, Fuller would have wanted him to raise this alleged error on appeal. (App. at 396-97, Docket Entry 19-1 at 398-99.) Trial counsel acknowledged in his testimony that the trial judge would not permit the demonstration. Trial counsel also testified that he believed that the denial of the in-court demonstration by the trial court was a "side issue,"

explaining that it was "a minor part of the evidence in a mountain of evidence that [Fuller] and I had to overcome." (App. at 413, Docket Entry 19-1 at 415.)

The PCR court found that trial counsel was not ineffective because counsel sufficiently raised the issue and counsel was not required to object to the trial court's ruling sustaining the State's objection to preserve the issue. The PCR court also rejected Fuller's "fall back position" of ineffective assistance of appellate counsel, finding that this issue was not raised in Fuller's application and was "not before the Court." (App. at 426, Docket Entry 19-1 at 428.) Thereafter, Fuller filed a *pro se* motion to alter or amend the judgment that included a request that the PCR court rule on his allegation of ineffective appellate counsel, but the PCR court denied the motion. (App. at 431-33, Docket Entry 19-1 at 433-435.)

## ii. Procedural Bar

The court finds that Ground One of Fuller's Petition is procedurally barred. The claim as to appellate counsel was not properly raised to the PCR court. Further, the parties agree that this issue—alleging either ineffective assistance of appellate or trial counsel—was not raised in Fuller's PCR appeal. Accordingly, this claim was not fairly presented to the South Carolina appellate courts and is barred from federal habeas review. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Moreover, this claim would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Fuller attempted to raise it now. See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

To the extent that Fuller alleges that this issue has been properly exhausted based on his attempt to present this issue directly to the South Carolina Supreme Court in a document entitled "Petition for Issuance of an Extraordinary Writ," that argument fails. As stated above, this petition was dismissed based on the state Supreme Court's determination that "no extraordinary reason exists to entertain [the Petition] in this Court's original jurisdiction." (Docket Entry 1-1 at 34; see also Docket Entry 19-11.) Accordingly, the state Supreme Court dismissed this petition on state procedural grounds that have been found to be independent and adequate. See Wilson v. Moore, 178 F.3d 266 (4th Cir. 1999). Thus, this ground is not properly exhausted and is procedurally barred unless Fuller can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman, 501 U.S. at 750.

In this case, Fuller has not alleged that a fundamental miscarriage of justice will occur; however, liberally construed, Fuller's arguments appear to allege that he can demonstrate cause for the default and actual prejudice. With regard to the cause element, Fuller appears to contend that this ground was not properly exhausted due to PCR appellate counsel's failure to include this ground. However, "there is no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752. Accordingly, there can be no right to effective assistance of counsel where there is no constitutional right to counsel. Wainright v. Torna, 455 U.S. 586 (1982). Since there is no right to effective assistance of counsel in state PCR proceedings, ineffective assistance of PCR appellate counsel cannot serve as cause for Fuller's default. Coleman, 501 U.S. at 753-55; see also Sidebottom v. Delo, 46 F.3d 744, 751 (8th Cir. 1995) (stating that the failure of a petitioner's PCR counsel to preserve grounds for appeal cannot constitute cause); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992) ("Ineffectiveness of counsel does not provide

sufficient cause to excuse procedural default when counsel is not constitutionally mandated."). Accordingly, Fuller has failed to demonstrate cause for the procedural default, and he is required to demonstrate *both* cause *and* actual prejudice to excuse procedural default.

### iii. Merits

Even if this ground were not procedurally barred, Fuller would not be entitled to federal habeas relief. With regard to trial counsel, as stated above, the PCR court found that trial counsel was not ineffective because counsel sufficiently raised the issue to the trial court and counsel was not required to object to the trial court's ruling sustaining the State's objection to preserve the issue for appeal. Fuller has failed to demonstrate, or even allege, that this determination was in error or that the PCR court made objectively unreasonable factual findings. Therefore, the court finds that Fuller cannot demonstrate that trial counsel was deficient as required by Strickland and that the PCR court, in concluding that trial counsel was not constitutionally ineffective, unreasonably misapplied clearly established federal law in rejecting this claim. See Williams v. Taylor, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).

With regard to appellate counsel, even assuming that appellate counsel was deficient in failing to raise the in-court demonstration issue on appeal, Fuller cannot demonstrate that he was prejudiced. In applying the second prong of Strickland to claims involving ineffective assistance of appellate counsel, a petitioner must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000) (citation omitted).

Fuller declares that the only evidence against him was the testimony of his co-defendant and Peay. He further declares that this issue was a "major issue" and the in-court demonstration would have discredited Peay's testimony. (Docket Entry 22-2.) However, even though the trial court did

*PJG*

not allow the in-court demonstration, the court observes that trial counsel described, in front of the jury, what the demonstration would reveal. Trial counsel further cross-examined Peay extensively concerning his observations and examined Fuller regarding the effect of the red lighting. Moreover, trial counsel argued these facts to the jury in his closing argument as one of the reasons to discredit Peay's testimony. Finally, the court observes that there is no indication in the record that this demonstration would have been successful and Fuller has failed to provide any support for his contention that trial judge's ruling denying the in-court demonstration was erroneous.

Based on the foregoing, the court finds that Fuller has failed to demonstrate that had appellate counsel raised this issue on appeal, it would have been successful. Further, based on the evidence presented and trial counsel's examination and arguments, Fuller has failed to demonstrate that the outcome of his trial would have been different had the demonstration been permitted.

### 3. Ground Two

In Ground Two of his Petition, Fuller argues that trial counsel was ineffective in failing to request a mere presence charge. The PCR court rejected this claim, concluding that "the facts here by [Fuller's] own testimony establish [Fuller] as a participant and exclude his being merely present at [the] victim's murder." (App. at 429, Docket Entry 19-1 at 431.) In his Petition, Fuller argues that the PCR court ignored evidence in the trial record that supported such a charge. Fuller states in his testimony that "he conspired to commit burglary and participated in covering up the murder but did not know about, foresee, or participate in the murder." (Pet., Docket Entry 1 at 8-9.) In response to the respondent's motion for summary judgment, Fuller does not provide any further support for, or even address, this ground.

At the PCR hearing, trial counsel testified that based on Fuller's own admissions, Fuller participated in the murder at least after the fact and trial counsel did not believe that mere presence

was an issue. (App. at 415, 418-19, Docket Entry 19-1 at 417, 420-421.) In ruling on this claim, the PCR court relied on the South Carolina Supreme Court's recitation of the facts of this case which were based on Fuller's own testimony, not the State's theory of the case. (App. at 428-29, Docket Entry 19-1 at 430-431.) Fuller's testimony reveals that he and two other individuals planned to rob another individual's home. While waiting outside the house, Fuller fell asleep in the car and awoke to the victim's screams. Fuller stated that he saw the two other individuals stabbing the victim and then the two other individuals exited the car and pulled the victim with them. Fuller testified that he drove away and then returned, planning to run over the other two individuals so they would release the victim. Instead, the other two individuals jumped into the car and Fuller drove them back to town. Fuller wondered if they would kill him. At their direction, Fuller first drove to a dumpster where one individual discarded the knife and then drove to the apartment of the other two individuals. Fuller then took a bag containing the other two individuals' bloody clothing to a dumpster and took one individual's bloody boots back to his apartment. The next day, Fuller gave one of the individuals towels and sponges to wash the car.

Upon thorough review of the record in this matter, the court finds that Fuller cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams v. Taylor, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Under the facts of this case, Fuller cannot demonstrate that trial counsel was deficient in failing to request a mere presence charge. See State v. James, 689 S.E.2d 643 (S.C. Ct. App. 2010) (describing the circumstances where a mere presence charge is applicable); State v. Hudgins, 460 S.E.2d 388 (S.C. 1995) (holding that a mere presence charge not warranted where appellant admitted stealing a truck and being involved in a series of unlawful acts which culminated in murder), overruled on other grounds by State v. Collins, 495

S.E.2d 202 (S.C. 1998); McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."). Finally, even assuming that counsel erred, Fuller has failed to demonstrate that he was prejudiced. See Strickland, 466 U.S. at 687. Based on the record before the court, Fuller cannot show that the trial court would have charged the jury with mere presence, even if trial counsel had made the request. Moreover, Fuller has failed to demonstrate, or even allege, that the outcome of the trial would have differed if this charge had been given. Therefore, Fuller is not entitled to habeas relief on this ground.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (Docket Entry 18) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 4, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).